# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**RODNEY CARSON,**                                    **CASE NO. 2:07-cv-00375**
                                                      **JUDGE SARGUS**
                    **Petitioner,**                   **MAGISTRATE JUDGE ABEL**

**v.**

**STUART HUDSON, Warden,**

                    **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed the instant petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254.  This matter is before the Court on the instant amended

petition, respondent's return of writ and supplemental response, and petitioner's

responses, and the exhibits of the parties.  Petitioner's motion to expand the record to

include the exhibits attached thereto, Doc. No. 44, hereby is **GRANTED.**  For the reasons

that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## FACTS AND PROCEDURAL HISTORY

The facts and procedural history of this case are detailed in this Court's *Order and*

*Report and Recommendation,* February 15, 2008, *see* Doc. No. 22, but are repeated here.  The

Ohio Tenth District Court of Appeals summarized the facts of this case as follows:

> The charges in this case arose out of the shooting death of Eric
> Rawlings ("Rawlings") that occurred on March 14, 2003, in
> front of the C & S Lounge on East Fifth Avenue in Columbus,
> Ohio. The autopsy revealed that Rawlings received two
> gunshot wounds, one to the back of the head, which caused

Rawlings' death, and one to the palm of the right hand.

On March 14, 2003, Henry Harris ("Harris") stopped at the C & S Lounge to get some take-out food. He saw appellant there, and as he was walking home, at approximately 5:30 p.m., Harris saw appellant riding a yellow bike.

William Bentley ("Bentley"), the only witness to the shooting, testified that he had gone out to pick up some dinner and was walking back home when he saw two men arguing. According to Bentley, one man, later identified as Rawlings, was being held by his coat. The man holding Rawlings had a gun in his waistband. Bentley was approaching the men, and when he was approximately 40 feet away, he saw the gun-man pull out the gun and he heard Rawlings yell, "[D]on't shoot me." (Tr. Vol. 4, at 127.) Bentley saw the gunman hold Rawlings with one hand, and with the other hand, the gunman put the gun to Rawlings' head and fired once. The gunman then fired three or four more shots in succession. Bentley watched the gunman get on a yellow bike and ride down the street to a pay phone where the gunman was yelling for someone to come and get him. Bentley went into his house, obtained his cell phone, and called 911. Bentley returned to the street and saw that the gunman was still on the pay phone. Bentley described the gunman as wearing jeans, a mid-length down-filled coat that was "puffy." (Id., at 129.) Bentley then saw a van pull up to the body, and three young men got out of the van, and searched Rawlings' pockets. One of the men took Rawlings' wallet, but Bentley did not see what he did with it. After about 15-30 seconds, the men got back into the van and sped away.

Dan Merce ("Merce") was walking his dog near the scene when he heard two men yelling and saw them pushing each other. Merce saw that one of the men had a gun and so Merce crossed the street to avoid them. Merce heard gunshots and ran down the street. When the gunshots ceased, Merce turned around to see one man lying on the ground, and the other man riding away on a yellow bike. Merce described the gunman as wearing a dark colored "puffy" jacket. (Tr. Vol. 6, at 136.) Merce also witnessed the van pulling up to the body, and the men from the van searching Rawlings' pockets.

Numerous calls were made to 911. Bentley's call was logged at 8:31 p.m. Officer Cummings was the first to arrive at the scene, which was approximately two minutes after the dispatcher aired the report. Officer Cummings secured the scene, and the police log indicates that Rawlings was taken to the hospital via ambulance at 8:44 p.m., and homicide detectives were requested at 8:46 p.m.

Christopher McCoy and his cousin, Mike Baber, were at Baber's residence, which is across the street from the pay phone, near the scene of the shooting. They went outside as police responded to the scene and saw an African-American male at the pay phone yelling and screaming. McCoy testified that he heard the man saying, "[C]ome fucking get me out of here. I did what I had to do." (Tr. Vol. 5, at 98.) McCoy recalled the man at the pay phone wearing jeans, a black do-rag, and a mid-length black leather jacket, and he did not recall any writing or any kind of lettering on the jacket. Baber also testified that he heard the man at the pay phone asking someone to come and get him out of there, and the man said, "I did what I had to do." (Id., at 171.) Baber described the man on the pay phone as wearing a medium length leather coat that was plain. Baber also testified that the man on the pay phone got on a yellow bike and rode away.

Telephone records confirmed that an outgoing call was placed from the pay phone near the scene to a toll free number registered to Carolyn Clark ("Clark"). The call was placed at 8:36 p.m., and lasted approximately seven minutes. Clark testified that at that time she lived with appellant's father, Richard Carson, and that the toll free number was given to Richard Carson's children.

In the months following the shooting, the police interviewed witnesses, appellant, and other suspects. On November 18, 2003, appellant was indicted by a Franklin County Grand Jury on one count of aggravated murder with two firearm specifications and one count of having a weapon under disability ("WUD"). Appellant pleaded not guilty to all of the charges and the case proceeded to jury trial. The jury found

appellant guilty of aggravated murder including the two firearm specifications. The WUD charge was tried to the bench. Appellant stipulated to his prior conviction and the trial judge found appellant guilty of the WUD charge. After denying appellant's motion for a new trial, the trial court sentenced appellant to twenty years to life for the aggravated murder conviction and a mandatory consecutive three-year term for the gun specification. Appellant timely appealed.

*State v. Carson*, 2006 WL 13551493 (Ohio App. 10 Dist. May 16, 2006); *Exhibit 15 to Return of Writ*. Petitioner filed his first motion for a new trial on September 28, 2004, prior to sentencing, and while he was still represented by trial counsel. He asserted the following claims:

1. Juror misconduct.

2. Discovery violations.

3. Prosecutorial misconduct.

4. Insufficiency of evidence.

*Exhibit 9 to Return of Writ.*[1] On November 10, 2004, the trial court denied petitioner's motion for a new trial. *Exhibit 10 to Return of Writ.* On November 24, 2004, still represented by counsel, petitioner again filed a motion for a new trial based upon newly discovered evidence.[2] *See Exhibit 11 to Return of Writ.* After a hearing, the trial court denied

---

[1] Petitioner asserted, *inter alia*, that the prosecutor failed to provide the proper address for prosecution witness Henry Harris, who had been sequestered during the trial by the prosecution for his safety. *See Exhibit 9 to Return of Writ.*

[2] The newly discovered evidence referred to by petitioner in his second motion for a new trial consisted of affidavits from Timothy Harrison stating that he heard

petitioner's second motion for a new trial.  *See Transcript, Vol. XIV*, December 3, 2004, at 30.

Represented by new counsel, petitioner raised the following assignments of error on direct appeal:

ASSIGNMENT OF ERROR I

The trial court erred when it entered judgment against Appellant when the evidence was insufficient to sustain a conviction and was not supported by the manifest weight of the evidence.

ASSIGNMENT OF ERROR II

The trial court commits reversible error when it fails to grant a mistrial when trial spectators intimidate the jury and the jury believes those spectators are in some way connected to Appellant in violation of his right to a fair trial under the state and federal constitutions.

ASSIGNMENT OF ERROR III

The trial court commits reversible error when it fails to instruct the jury that they need not reach a unanimous decision regarding Appellant's guilt on the principal charge, before considering the lesser included offense.

ASSIGNMENT OF ERROR IV

Appellant's due process rights under the state and federal constitutions were violated when he was subjected to an in custody interrogation without being properly advised of his *Miranda* rights, and after he invoked his right to counsel.

ASSIGNMENT OF ERROR V

---

James Parham admit to shooting Rawlings,  and Charles Alexander stating that petitioner was not involved in an altercation with Rawlings on the night of the murder. *See Exhibit 11 to Return of Writ.*

To the extent that the errors in Assignment of Error 3 and 4 are not cognizable under the plain error rule, Appellant was denied his right to effective assistance of counsel under the state and federal constitutions.

ASSIGNMENT OF ERROR VI

Appellant's right to due process under the state and federal constitutions was violated by prosecutorial misconduct when the state tried to shift the burden of proof to Appellant and solicited inadmissible testimony.

*See id.* On May 16, 2006, the appellate court affirmed the judgment of the trial court. *Id.*

Still represented by counsel, petitioner filed a timely appeal to the Ohio Supreme Court.

He again raised the same issues that he presented on appeal. *Exhibit 16 to Return of Writ.*

On October 4, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the

appeal as not involving any substantial constitutional question. *State v. Carson*, 111 Ohio

St.3d 1416 (2006); *Exhibit 18 to Return of Writ.*

On November 1, 2006, petitioner filed a third *pro se* motion for leave to file a delayed

motion for new trial in the trial court. He asserted as follows:

1. Irregularities in trial proceedings that prevented defendant from receiving a fair trial.

2. Misconduct of the prosecuting attorney substantially affected defendant's rights.

3. Accident or surprise which materially affected the rights of the defendant.

4. Error of law in which defendant's constitution[al] rights, namely U.S.C. Amend. VI and XIV were violated.

*Exhibit 19 to Return of Writ.* On May 3 2007, petitioner filed a motion to supplement his delayed motion for a new trial with a claim of ineffective assistance of trial counsel. *Exhibit 22 to Return of Writ.* On May 24, 2007, the trial court denied petitioner's motion for a new trial as untimely and barred under Ohio's doctrine of *res judicata. Exhibit 26 to Return of Writ.* Petitioner filed a timely appeal, in which he asserted the following assignments of error:

> [1.] The Appellant-Petitioner was denied Due Process of Law when the Clerk of Courts of Franklin County, Ohio, failed to enter into the record and Docket the Appellant's Motion for leave to file a Motion for New Trial, but returned the Appellant's time-stamped copy to the Appellant, thereby denying the Court a copy of said Motion for leave to file a Motion for New Trial for the Courts [sic] determinations.

> [2.] The Trial Court erred and abused it's [sic] discretion by not granting the Defendant-Appellant a hearing on His Motion for New Trial.

> [3.] The Trial Court erred and abused it's [sic] discretion by not granting the Defendant-Appellant's Motion for New Trial.

*See State v. Carson*, 2007 WL 4216957 (Ohio App. 10th Dist. November 29, 2007). On November 29, 2008, the appellate court affirmed the trial court's decision. *Id.* On March 28, 2008, the Ohio Supreme Court dismissed petitioner's subsequent appeal. *State v. Ohio,* 117 Ohio St.3d 1442 (2008); *Exhibit 36 to Return of Writ.*

On May 3, 2007, petitioner filed the instant *pro se* petition for a writ of habeas corpus

pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

1. Evidence was insufficient to sustain a conviction, due process.

2. Due process and fair trial violation of defendant-petitioner's rights.

3. Due process fair trial violations.

4. Due process and right to remain silent were violated when the petitioner invoked his right to an attorney at questioning.

On May 5, 2008, upon petitioner's notification of exhaustion, the Court granted petitioner's request to amend the petition to include the following additional claims (*see* Doc. Nos. 24, 33):

5. Defendant-petitioner was denied his right to effective assistance of trial counsel during trial and subsequent proceedings.

6. Defendant-petitioner was denied due process-fair trial by the State of Ohio's withholding of exculpatory evidence, being a *Brady v. Maryland, supra,* violation.

7. Trial counsel was ineffective to the prejudice of the defendant-petitioner by a failure to investigate the charges/discovery/witnesses/alibi witnesses, and for failure to adequately confront the witnesses of the State of Ohio and impeach same.

8. The petitioner is actually innocent of the charges.

9. Ineffective assistance of trial counsel for lack of representing the petitioner during the adversarial process, confronting witnesses, presenting witnesses and alibi witnesses,

impeaching witnesses, lack of researching the law and charges against the petitioner and preparing for trial with adequate investigation into the known evidence that the State of Ohio possessed.

It is the position of the respondent that petitioner's claims are procedurally defaulted or without merit.

## CLAIM ONE: INSUFFICIENCY OF THE EVIDENCE

In claim one, petitioner asserts that the evidence was constitutionally insufficient to sustain his convictions. Petitioner again argues, as he did before the state appellate court, that the evidence was constitutionally insufficient to sustain his convictions due to the lack of physical evidence linking him to the crime and a lack of evidence establishing his prior calculation to commit murder. According to petitioner, he was convicted only because he used the pay phone after Rawlings was shot and killed and after the police had already arrived at the scene. The state appellate court rejected this claim as follows:

> [D]efendant contends that the evidence was insufficient to sustain a conviction and that his conviction was not supported by the manifest weight of the evidence.

> The Ohio Supreme Court described the role of an appellate court presented with a sufficiency of the evidence argument in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond

a reasonable doubt. ( *Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)

Whether the evidence is legally sufficient is a question of law, not fact. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In determining the sufficiency of the evidence, an appellate court must give "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. Consequently, the weight of the evidence and the credibility of the witnesses are issues primarily determined by the trier of fact. *State v. Yarbrough,* 95 Ohio St.3d 227, 767 N.E.2d 216, 2002-Ohio-2126, at ¶ 79; *State v. Thomas* (1982), 70 Ohio St.2d 79, 80, 434 N.E.2d 1356. Thus, a jury verdict will not be disturbed unless, after viewing the evidence in a light most favorable to the prosecution, it is apparent that reasonable minds could not reach the conclusion reached by the trier of fact. *State v. Treesh* (2001), 90 Ohio St.3d 460, 484, 739 N.E.2d 749; *Jenks,* supra.

***

With respect to his sufficiency claim, appellant advances two arguments. First, appellant contends that there is insufficient evidence to sustain his conviction because no one identified appellant as the shooter, there is no physical evidence linking appellant to the shooting, and the evidence points strongly to another suspect, specifically Rashawn Garner ("Garner"). Thus, under this argument, appellant argues that his conviction should be vacated in its entirety. Second, appellant argues in the alternative that the facts do not support an aggravated murder conviction because there is no evidence that the murder occurred with prior calculation and design as is required under R.C. 2903.01(A)'s definition of aggravated murder. Thus, under his alternative argument, appellant argues that his conviction for aggravated murder should be vacated and a conviction for murder ordered.

With respect to appellant's argument that there is insufficient evidence to determine that he was the shooter, the Supreme

Court of Ohio has held that "[a] conviction can be sustained based on circumstantial evidence alone." *State v. Franklin* (1991), 62 Ohio St.3d 118, 124, 580 N.E.2d 1, citing *State v. Nicely* (1988), 39 Ohio St.3d 147, 154-155, 529 N.E.2d 1236. In fact, circumstantial evidence may " 'be more certain, satisfying and persuasive than direct evidence.' " *State v. Ballew* (1996), 76 Ohio St.3d 244, 249, 667 N.E.2d 369, quoting *State v. Lott* (1990), 51 Ohio St.3d 160, 167, 555 N.E.2d 293, quoting *Michalic v. Cleveland Tankers, Inc.* (1960), 364 U.S. 325, 330, 81 S.Ct. 6, 11, 5 L.Ed.2d 20. As will be explained, we find that there is sufficient evidence in the record to establish the shooter's identity in this case.

Harris testified that he saw appellant on March 14, 2003 at the C & S Lounge, and as he was walking home from the C & S Lounge, he saw appellant riding a yellow bike at approximately 5:30 p.m. Bentley and Merce both testified that two men were arguing outside the C & S Lounge, and after the shooting occurred, the shooter rode a yellow bike down the street. Bentley testified that the shooter rode the bike to the pay phone at 2909 East Fifth Avenue. McCoy and Baber testified that they saw a man with a yellow bike at the pay phone and they heard him yelling, "I did what I had to do." (Tr. Vol. 5, at 98 and 171.) The evidence in the record further establishes that appellant was the man using the pay phone. Not only did appellant admit using the pay phone that night, the phone records indicate that only one call was placed within minutes of the murder, and the call was placed to the residence where appellant's father lived.

Appellant argues that there are inconsistencies in the record. Specifically, appellant contends that Bentley's testimony is suspect because Bentley testified that he saw the shooter go the pay phone, and he saw a van pull up to the scene at this same time; therefore, appellant argues that Bentley must have had to look away to see the van, and this renders his testimony incredulous. However, as discussed above, there was other testimony, including that from Merce, McCoy, and Baber relating to the use of the pay phone in the minutes after the murder. It is not proper to single out the testimony of one witness, as defendant has, to argue that the testimony of all the

other witnesses is not believable. Further, we do not find that Bentley's testimony is at odds with the other witnesses.

Taken together, the testimony of all the witnesses is clearly sufficient to establish that the shooter was indeed the person using the pay phone, and the record is also clearly sufficient to establish that appellant was the person using the pay phone. To the extent that appellant attempts to point out inconsistencies in the testimony, we reiterate that such issues are primarily determined by the trier of fact as the trier of fact is in the best position to determine whether the witnesses' testimony is credible. *Jenks, supra; Williams, supra.*

Appellant also contends under his first assignment of error that the evidence in this case points more strongly towards another suspect, Garner. According to the record, the jury was well aware that the police approached Garner as a suspect on the night of the murder. The record contains testimony from Garner himself, explaining that he came onto the scene after the murder had taken place. Garner testified that he was on a COTA bus, and that the bus took a detour because Fifth Avenue was closed due to the police responding to a report that a man had been shot. Garner stated that he had to be dropped off at a different stop, and shortly thereafter, while he was walking down the street, he was approached by the police. Charles Kreisel, the COTA bus driver testified that the bus did have to be detoured after the police closed Fifth Avenue, and that he did recall letting one man off the bus at the location where Garner said he was dropped off. Also, Merce, Baber, and McCoy testified that they did not recall the back of the shooter's jacket having lettering on it, but that it was a plain, black jacket. The record established that the jacket that Garner was wearing that night was a black leather jacket with large lettering on the back, and it was not a "puffy" jacket as Bentley and Merce had described. Appellant advanced his theory of another shooter at trial and the jury rejected it. As stated above, there was sufficient evidence in the record for the jury to reach its conclusion.

Thus, based on the evidence and testimony of all the witnesses, when viewed in a light most favorable to the prosecution, a

rational trier of fact could have found beyond a reasonable doubt that appellant was indeed the person who shot Rawlings. Similarly, the evidence is sufficient to sustain not only the two gun specifications, but also the WUD conviction.

In his alternative argument, appellant argues that there is insufficient evidence to sustain his conviction for aggravated murder, because there is no evidence that the act was committed with prior calculation and design as required by R.C. 2903 .01(A). In defining the offense of aggravated murder, R.C. 2903.01(A) provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another[.]"

Prior calculation and design requires something more than instantaneous deliberation. *State v. Cotton* (1978), 56 Ohio St.2d 8, 381 N.E.2d 190, paragraph two of the syllabus. Where evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified. Id., paragraph three of the syllabus. There is no bright line test to determine whether prior calculation and design are present, rather each case must be decided on a case-by-case basis. *State v. Taylor* (1997), 78 Ohio St.3d 15, 676 N.E.2d 82. "Prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill within a few minutes." *State v. Coley* (2001), 93 Ohio St.3d 253, 264, 754 N.E.2d 1129.

While appellant argues that the State failed to prove that this was anything more than an argument that turned violent, we find that the record contains sufficient evidence from which the jury could have concluded, beyond a reasonable doubt, that appellant acted with prior calculation and design. Merce and Bentley both testified that they heard the two men arguing. Merce heard one man say, "You're my nigger. You're my nigger. You're my nigger. What's up? Don't do this. Stop." (Tr. Vol. 6, at 130-131.) The other man responded, "It's all good. It's all good. Throw it across the street. You know you're my nigger. We're friends. It's all good." (Id. at 131, 754 N.E.2d

1129.)

As pointed out by appellee, the first statement is easily attributed to the victim, Rawlings. Thus, the second statement, is attributed to appellant. The conversation indicates that these two men knew each other and that appellant wanted something from Rawlings, as he indicated for Rawlings to "throw it across the street."

Also, the manner in which Rawlings was killed supports the finding of prior calculation and design. If a victim is killed in a cold-blooded, execution-style manner, the killing bespeaks aforethought, and a jury may infer prior calculation and design. See *State v. Trewartha,* Franklin App. No. 04AP-963, 2005 Ohio 5697; *State v. Campbell* (2000), 90 Ohio St.3d 94; *State v. Palmer* (1997), 80 Ohio St.3d 543, 687 N.E.2d 685; *Taylor,* supra. The record in this case reveals that appellant held Rawlings with one arm, while he positioned his other arm so that the gun was against Rawlings' head. Rawlings yelled, "Don't shoot me," and appellant pulled the trigger. Appellant then fired three to four more shots at Rawlings.

When construing the evidence in a light most favorable to the prosecution, which we are required to do, we find that there is sufficient evidence to support the jury's finding that appellant purposely killed Rawlings with prior calculation and design. See *State v. Goodwin* (1999), 84 Ohio St.3d 331, 703 N.E.2d 1251 (finding sufficient evidence of prior calculation and design where defendant placed a gun to the head of an unresisting victim, pulled the trigger, then placed the gun to the head of another store clerk and continued robbing the store); *Taylor* (finding sufficient evidence of prior calculation and design when defendant exchanged words with the victim, moved his girlfriend out of the way to strategically position the victim and then continued shooting the victim after he was down).

\*\*\*

Accordingly, appellant's first assignment of error is overruled.

*State v. Carson, supra,* 2006 WL 1351493.

The factual findings of the state appellate court are presumed to be correct. 28 U.S.C. § 2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

*Id.* Further, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established federal law or was based on an unreasonable determination of the facts of record. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* 28 U.S.C. §2254(d).

> A state court's determination is contrary to federal law when the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or on indistinguishable facts. *Williams v. Taylor,* 529 U.S. 362, 412-13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an unreasonable application of federal law when the state court correctly identified the applicable legal principle from Supreme Court precedent, but applied that principle to the

> facts before it in an unreasonable manner. *Id.* at 413, 120 S.Ct.
> 1495.

*Maldonado v. Wilson*, 416 F.3d 470, 475 (6th Cir. 2005). Petitioner has failed to meet this standard here.

To the extent that petitioner asserts that his convictions are against the manifest weight of the evidence, such claim is not appropriate for federal habeas corpus review. The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without enough proof to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle,* 703 F.2d 959, 969 (6th Cir.1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find teach element of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U .S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence, and the credibility of the witnesses. *Jackson,* 443 U.S. at 319; *Walker,* 703 F.2d at 969.

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a "thirteenth juror" and review the entire record, weight the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and

created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida,* 457 U.S. 31 (1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, any claim that petitioner's conviction was against the manifest weight of the evidence cannot be considered by this Court.

Before a criminal defendant can be convicted consistent with the United States Constitution, there must be sufficient evidence to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson v. Virginia, supra,* 443 U.S. at 319. To determine whether the evidence was sufficient to support a conviction, this Court must view the evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992)(citing *Jackson,* at 319.) The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson,* at 326). "[A] reviewing court 'faced with a record that supports conflicting inferences must presume-even if it does not appear on the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Id.* (quoting *Jackson,* at 326).

Upon review of the entire record, and for the reasons detailed by the Ohio Court of Appeals, this Court agrees that, when viewing all of the evidence in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, and notwithstanding petitioner's arguments to the contrary, the evidence was constitutionally sufficient to sustain his convictions. As discussed by the state appellate court, the record reflects that Henry Harris

observed petitioner riding a yellow bike in the area several hours before Rawlings was killed. Witnesses to the murder watched the killer ride a yellow bike to the pay phone immediately after shooting Rawlings in the head where the killer was heard asking for someone to come and get him. Petitioner placed a call from this same pay phone that lasted approximately seven minutes just after a 911 call was made to police and before Rawlings was transported by ambulance to the hospital. This was the only call made from the pay phone on that night of the murder during the time period at issue. "'Circumstantial evidence alone, if substantial and competent, may support a verdict and need not remove every reasonable hypothesis except that of guilt.'" *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002), quoting *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999). Additionally, for the reasons detailed by the state appellate court, this Court agrees that the evidence construed in the light most favorable to the prosecution, *see Jackson v. Virginia, supra*, was constitutionally sufficient to establish prior calculation and design under O.R.C. §2903 .01(A).

Claim one is without merit.

## CLAIM TWO

In claim two, petitioner asserts that he was denied a fair trial because the trial court failed to *sua sponte* declare a mistrial after men entered the courtroom during petitioner's trial and purportedly intimidated the jury. The state appellate court rejected this claim as follows:

In his second assignment of error, appellant argues that the trial court abused its discretion when it failed to declare a mistrial. This argument is based on the fact that during the trial two men entered the courtroom and sat in the gallery seats in the middle section of the courtroom. During a break, one juror observed approximately 30 uniformed officers escort the men from the building. The juror reported this to the other jurors. The incident was brought to the attention of the court, and each juror was questioned about what they had seen in the courtroom, heard from other jurors, how they felt about the incident, and whether they felt the incident affected their ability to render a fair and impartial verdict. Each juror, after discussing the incident with the court, stated that the incident did not affect his or her ability to perform their duty to render a fair and impartial verdict. Outside the jury's presence, appellant's trial counsel indicated that the two men were appellant's brothers. Appellant's counsel requested five minutes to speak with her client, which the court granted. When proceedings resumed, the following exchange took place:

[The court]: For the record, Miss Beauchamp, I understand that you had a discussion with your client about the events that have transpired here.

[Appellant's counsel]: Yes, Your Honor, I have, and Mr. Kelly was present also. He and I have consulted, and at the direction of our client, we have determined not to request a mistrial at this time.

(Tr. Vol. 7, at 85.)

Appellant now argues that the trial court abused its discretion in failing to grant a mistrial.

"In cases involving outside influences on jurors, trial courts are granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an

affected juror." *State v. Conway* (2006), 108 Ohio St.3d 214, 245, 842 N.E.2d 996, quoting *State v. Phillips* (1995), 74 Ohio St.3d 72, 88, 656 N.E.2d 643. "When a trial court learns of an improper outside communication with a juror, it must hold a hearing to determine whether the communication biased the juror." *State v. Phillips* (1995), 74 Ohio St.3d 72, 88, 656 N.E.2d 643. "The complaining party must show actual prejudice, see, generally, Crim.R. 33(A), *i.e.,* he must show that the communication biased one or more jurors." *State v. Herring,* (2002), 94 Ohio St.3d 246, 259, 762 N.E.2d 940 (citations omitted).

In the case *sub judice*, the record reveals that the trial court held a hearing to examine each juror separately. While one juror testified that she felt intimidated by the men when they were in the courtroom because they were acting like "tough guys," and most of the jurors speculated that the men were affiliated with appellant, *each* juror testified that the incident would not affect his or her ability to be fair and impartial to both sides. "A trial court may rely upon a juror's testimony as a basis for finding that her impartiality was not affected." *Id.* at 259, 762 N.E.2d 940. Finding no abuse of discretion by the trial court, we overrule appellant's second assignment of error.

*State v. Carson, supra,* 2006 WL 1351493. Again, petitioner has failed to establish that federal habeas corpus relief is warranted. *See* 28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra.*

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a .... trial, by an impartial jury .... [and] to be confronted with the witnesses against him...." *Parker v. Gladden,* 385 U.S. 363, 365 (1966), citing *Kirby v. United States,* 174 U.S. 47, 55, 56 (1899); *Pointer v. Texas,* 380 U.S. 400 (1965); *In re Oliver,* 333 U.S. 257, 273 (1948). "The defendant's right in a criminal case to receive a fair trial by a panel of impartial and indifferent jurors is a basic requirement of due process." *Mays v. Chandler,* 2007 WL 2903212 (E.D. Ky September 28, 2007), citing *United States v. Rigsby,* 45 F.3d 120,

122 (6th Cir.1995)(citing *Irvin v. Dowd,* 366 U.S. 717, 721 (1961)).Where juror misconduct is alleged, the trial court should conduct a hearing with all interested parties to determine the circumstances and impact of the alleged misconduct. *Remmer v. United States*, 347 U.S. 227, 229-30 (1954); *see also United States v. Rugiero*, 20 F.3d 1387 (6th Cir.1994). The burden is on the defendant to prove actual juror partiality. *United States v. Pennell,* 737 F.2d 521, 532 (6th Cir.1984). Juror testimony at such a hearing is not inherently suspect. *Zuern v. Tate,* 336 F.3d 478, 486 (6th Cir.2003) citing *United States v. Rugiero, supra,* 20 F.3d at 1390.

Here, petitioner alleges that he was denied a fair trial based upon the conduct of two observers to the trial which resulted in their ejection from the court room.

> In *Carey v. Musladin,* --- U.S. ----, 127 S.Ct. 649, ---L.Ed.2d ---- (2006), a petitioner sought habeas relief on the grounds that at trial the victim's family "sat in the front row of the spectators ' gallery" wearing buttons with the victim's picture on them.... The Supreme Court unanimously rejected the petitioner's claim [that he was thereby denied a fair trial] holding that the state court's decision was not an unreasonable application of Supreme Court precedent because the Supreme Court had never held that spectator conduct could violate a defendant's right to a fair trial. Three concurring justices agreed with the result but disagreed with the majority's implication that distinguishing between conduct by the government or by spectators is relevant.

*Mendoza v. Berghuis*, 2007 WL 37745 *19 (E.D. Michigan January 4, 2007).

The record reflects police removed two men from the courtroom who apparently had made a threatening gesture towards the victims' family. Afterwards, the trial court and counsel questioned each juror individually. None of the jurors indicated either that

they had witnessed anything that would prevent them from being fair and impartial, or that the incident would affect their decision in this case. *See Transcript*, Volume 7, at 34-85. Petitioner's allegation to the contrary is without record support. Further, he opposed declaration of a mistrial at that time. *Id.*, at 85.

Under 28 U.S.C. §2254 (d), the state court findings of fact are presumed to be correct; and petitioner has failed to rebut that presumption. Further, under 28 U.S.C. § 2254(d) state court conclusions of law are binding on a federal court in habeas corpus unless they resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . ." Here petitioner has failed to demonstrate that the state court conclusions of law are contrary to clearly established Supreme Court precedent.

Claim two is without merit.

## CLAIM THREE

In claim three, petitioner asserts that he was denied a fair trial because the prosecutor improperly shifted the burden of proof to the defense during closing arguments, and improperly questioned Detective Rond. The state appellate court petitioner's claim of prosecutorial misconduct as follows:

> [A]ppellant argues that his due process rights were violated by prosecutorial misconduct, which consisted of appellee's solicitation of inadmissible testimony and appellee's attempt to

shift the burden of proof to appellant.

"[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips* (1982), 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78, 87.

"[T]here can be no such thing as an error free, perfect trial, and * * * the Constitution does not guarantee such a trial." *United States v. Hasting* (1983), 461 U.S. 499, 508-509, 103 S.Ct. 1974, 1980, 76 L.Ed.2d 96, 106.

*State v. Lundgren,* (1995), 73 Ohio St.3d 474, 487, 653 N.E.2d 304.

"We will not deem a trial unfair if, in the context of the entire trial, it appears clear beyond a reasonable doubt that the jury would have found the defendant guilty even without the improper comments." *State v. Skatzes* (2003), 104 Ohio St.3d 195, 229, 819 N.E.2d 215.

Appellant's first allegation of prosecutorial misconduct is that during the prosecutor's rebuttal in closing arguments she attempted to shift the burden of proof to appellant. The prosecutor stated, "for you to let him go, he has to prove to you that he was at the scene after the murderer was gone because the detective told him, 'we have a witness to you being at the scene.' " (Tr. Vol. 9, at 197.) Appellant's counsel objected to the statement, and the trial court overruled the objection.

The prosecuting attorney's trial conduct can only be made a ground for error on appeal if the conduct deprives the defendant of a fair trial. Additionally, we must consider the conduct about which appellant complains in the context of the entire trial. Where is it apparent from the facts and circumstances of the case that the discretion of the trial court has not been abused, a reviewing court will not ordinarily interfere. *State v. Saunders* (Nov. 21, 2000), Franklin App. No.

99AP-1486. "In general, prosecutors are given considerable latitude in opening statement and closing argument." *State v. Mayes*, Franklin App. No. 03AP-1154, 2005-Ohio-1769, ¶ 27. In closing arguments, a prosecutor may comment upon the testimony and other evidence and may suggest reasonable inferences to be drawn therefrom. *Id.*; *State v. Furman*, 11th App. No.2001-L-213, 2003-Ohio-2100.

While we do not condone, and caution against the use of the language utilized by the prosecutor in this instance, after careful review of the transcript from appellant's trial, we are unable to conclude that appellee's closing arguments denied appellant a fair trial. First, it is important to note the context in which the prosecutor's statement was made, which was during appellee's rebuttal during closing argument. The prosecutor was rebutting facts set forth by appellant in his statements to the police throughout their investigation. The prosecutor stated as follows:

He saw the shoes. Now, the explanation for that big faux pas is that he was drunk, upset, and confused and he imagined seeing shoes in the street when he's talking to the police.

No, what he was trying to do was convince the police officer that he had actually been at the scene after the murder and had seen these things-yeah, I saw the body. I saw the shoes left behind-to give him some kind of credibility with the police officer when in reality none of that is true. The shoes never came off the feet of Eric Rawlings until he was at the coroner's office.

He has to be at the scene. For you to let him go, he has to prove to you that he was at the scene after the murderer was gone because the detective told him, "we have a witness to you being at the scene."

(Tr. Vol. 9, at 197.)

Second, the prosecutor's remark in this case was isolated and did not pervade throughout appellee's closing. Third, the trial court clearly instructed the jury that opening and closing arguments are not evidence, but the opinion and observations of counsel. Further, and perhaps most importantly, the trial court specifically instructed the jury on the burden of proof, in part, as follows:

The defendant is presumed innocent unless his guilt is established beyond a reasonable doubt. The defendant must be acquitted unless the state has produced evidence which convinces you beyond a reasonable doubt of every essential element of the crimes charged in the indictment.

(Tr. Vol. 10, at 5.)

The trial court reiterated appellee's burden of proof when instructing on both aggravated murder and the lesser included offense of murder as well as the specifications. In conclusion, the trial court instructed:

If you find that the state has proved beyond a reasonable doubt all of the essential elements of the offenses charged in the indictment, your verdict must be guilty as to such crime according to your findings.

If you find that the state has failed to prove beyond a reasonable doubt any one of the essential elements of the offenses, your verdict must be not guilty as to such offense.

(*Id.*, at 13-14.)

A jury may be presumed to follow the instructions of the court. *State v. Henderson,* Franklin App. No. 04AP-1212, 2005-Ohio-4970 ¶ 19 (citations omitted). After reviewing the closing argument in its totality, and after reviewing the comment in the context of the entire trial, we do not find that the trial court erred in overruling appellant's objection.

Also contained in his final assignment of error alleging prosecutorial misconduct is appellant's argument that appellee solicited inadmissible testimony. Appellant directs us to the direct examination of Detective Rond. The prosecutor was questioning the detective on various standard procedures that take place during an investigation regarding witnesses' statements, how the summaries for them are prepared and the like. The following exchange occurred:

[Prosecutor]: When did you settle on Rodney Carson as the shooter in this case?

[Witness]: After I spoke-

[Appellant's Counsel]: Objection. His opinion is irrelevant.

The Court: Overrule.

[Prosecutor]: The question was when.

[Witness]: When, May 24.

(Tr. Vol. 7, at 149-150.)

Appellant argues that this question permitted the detective to tell the jury that it is his opinion that appellant is guilty, and that such is prohibited under Evid.R. 701 and 704. We find no merit to appellant's argument.

The question clearly did not elicit an opinion from the detective as to appellant's guilt. Even the brief exchange set forth above establishes that the prosecutor was inquiring about when appellant became a suspect in this case. There is nothing prejudicial in this question as the jury was obviously aware that appellant had been a suspect since he was ultimately

> charged with the crime. Further, the time frame was relevant in this case because there was a period of months between the murder and the indictment, and because there were multiple suspects in the case. Thus, it was necessary to demonstrate the progression of the investigation.
>
> After reviewing the prosecutor's question to the detective and the comment made in closing argument in the context of the entire trial, we do not find that the trial court erred in overruling appellant's objection, nor are we able to find prejudice to appellant such that appellant was denied a fair trial. Accordingly, appellant's sixth assignment of error is overruled.

*State v. Carson, supra*, 2006 WL 1351493. As discussed, the factual findings of the state appellate court are presumed to be correct, 28 U.S.C. §2254(e), and a federal habeas court cannot grant relief unless the state court's decision contravened or unreasonably applied federal law, or resulted in a decision that was based on an unreasonable determination of the facts. 28 U.S.C. §2254(d). *See Williams v. Taylor, supra.* The record fails to reflect that such are the circumstances here.

To the extent that petitioner raises a claim regarding a violation of state law, that claim is not appropriate for federal habeas corpus review. A federal court may review a state prisoner's habeas petition only on the grounds that the challenged confinement is in violation of the Constitution, laws or treaties of the United States. 28 U.S.C. §2254(a). A federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *Smith v. Sowders,* 848 F.2d 735, 738 (6th Cir.1988). A federal habeas court does not function as an additional state appellate court

reviewing state courts' decisions on state law or procedure. *Allen v. Morris,* 845 F.2d 610, 614 (6th Cir.1988). " '[F]ederal courts must defer to a state court's interpretation of its own rules of evidence and procedure' " in considering a habeas petition. *Id.* (quoting *Machin v. Wainwright,* 758 F.2d 1431, 1433 (11th Cir.1985)). Only where the error resulted in the denial of fundamental fairness will habeas relief be granted. *Cooper v. Sowders,* 837 F.2d 284, 286 (6th Cir.1988). Such are not the circumstances here.

Petitioner's claim of prosecutorial misconduct likewise fails. The scope of federal habeas corpus review of a claim of prosecutorial misconduct is narrow. A federal court does not sit as an appellate court employing supervisory powers to rectify ordinary trial error in cases before it for habeas review. *Donnelly v. De Christoforo,* 416 U.S. 637 (1974). Rather, the Court must consider only whether the prosecutor's conduct was so egregious as to deny the petitioner fundamental fairness. *Id.* at 642-43; *Martin v. Foltz,* 773 F.2d 711, 716-17 (6th Cir.1985); *Angel v. Overberg,* 682 F.2d 605, 607 (6th Cir.1982)( *en banc* ). This determination is made by evaluating the totality of the circumstances surrounding the case. *Angel v. Overberg,* 682 F.2d at 607.

> Factors relevant in making this inquiry are: the degree to which the remarks may tend to mislead the jury and to prejudice the accused; whether the remarks were isolated or extensive; whether they were deliberately placed before the jury; and the strength of the case against the accused. Finally, this Court notes the "extreme nature of the prosecutorial misconduct required for a federal court to issue the writ."

*Martin v. Foltz,* 773 F.2d at 716 (citations omitted)(quoting *Cook v. Bordenkircher,* 602 F.2d

117, 120 (6th Cir.).

Upon consideration of the foregoing factors, the record fails to reflect that the prosecutor's brief remark in closing argument was of such an egregious nature, particularly in view of the jury instructions on burden of proof and the weight to be given to closing arguments, or that the prosecutor's questioning of Detective Rond was improper so as to justify federal habeas corpus relief.

Claim three is without merit.

## CLAIM FOUR

In claim four, petitioner asserts that he was denied a fair trial because his statements improperly were admitted against him after he invoked his right to counsel.[3] The state appellate court rejected this claim as follows:

> Also contained in his fourth assignment of error is appellant's argument that he invoked his right to counsel, and, therefore, any statements made by him at the November 8, 2003 interview should have been suppressed due to the violation of *Edwards v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. At the November 8, 2003 interview, Detective Carney had appellant read out loud portions of the rights waiver form. After appellant read a portion of the form, the following exchange took place:
>
> Detective Carney: Okay. Do you understand all that?
>
> [Appellant]: Yeah.

---

[3] Petitioner also asserts that his statements were obtained in violation of *Miranda;* however, that claim, for reasons discussed *infra*, has been waived.

Detective Carney: Do you have any questions regarding that?

[Appellant]: (witness shook head)

Detective Carney: Okay.

[Appellant]: My lawyer's name is Sarah Beauchamp so-

Detective Carney: Okay. Do me a favor and read the waiver section. It doesn't mean you agree. It just means you've read it.

(Tr. Vol. 1, at 55.)

Thereafter, appellant indicated that he understood it, he signed that he read it and understood it, and the interview continued. This above cited reference to appellant's attorney is what appellant argues was his request for counsel.

As recently stated by the Supreme Court of Ohio in *State v. Jackson,* (2006), 107 Ohio St.3d 300, 309, 839 N.E.2d 362, 2006-Ohio-1:

Under the *Fifth Amendment,* an accused must clearly invoke his constitutional right to counsel in order to raise a claim of deprivation of counsel. "The suspect must unambiguously request counsel. * * * [H]e must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney. If the statement fails to meet the requisite level of clarity, *Edwards [v. Arizona* (1981), 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378] does not require that the officers stop questioning the subject." *Davis v. United States* (1994), 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362.

In *Jackson* the Supreme Court found that Jackson's statements "I talked to a lawyer or something" or "when I talk to my lawyer" did not amount to a clear, unambiguous, or unequivocal invocation of the right to counsel. Similarly, the Supreme Court has held that "I think I need a lawyer" is not an unequivocal assertion of the right to counsel. *State v. Henness* (1997), 79 Ohio St.3d 53, 62-63, 679 N.E.2d 686. In *State v. Brown* (2003), 100 Ohio St.3d 51, 796 N.E.2d 506, 2003-Ohio-5059, the court held that "don't I supposed to have a lawyer present" was "at best ambiguous." Id. at 56, 796 N.E.2d 506. In *Jackson*, the court went on to state:

> Other courts have found similar remarks to be ambiguous and thus not invoking the constitutional right to counsel. *See, e.g., Mueller v. Angelone* (C.A.4, 1999), 181 F.3d 557, 573-574 (defendant's question to police, "do you think I need an attorney here" answered by headshaking, a shrug, and the statement "You're just talking to us," was not an unequivocal request); *Dormire v. Wilkinson* (C.A.8, 2001) 249 F.3d 801 ("Could I call my lawyer?" followed by police response of "yes" did not invoke the right to counsel); *United States v. Zamora* (C.A.10, 2000), 222 F.3d 756, 766 ("I might want to talk to an attorney" was not "an unequivocal request for counsel").

> *Id*. at 309-310.

> Here, we find that appellant's alleged request for counsel was neither clear nor unambiguous. As appellee points out, this was not appellant's first contact with the criminal justice system. Appellant did not request an attorney, but merely stated that he had one. As in the previously-cited cases analyzed by the Supreme Court of Ohio, we find that appellant's statement is not sufficient to invoke the constitutional right to counsel.

*State v. Carson, supra*, 2006 WL 1351493. Again, petitioner has failed to establish that the state appellate court's conclusion is so unreasonable as to justify federal habeas corpus

relief. 28 U.S.C. §2254(d), (e); *Williams v. Taylor, supra.*

The Fifth Amendment provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." The privilege against self-incrimination prohibits the government from using any statement against a criminal defendant "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona, supra,* 384 U.S. at 444. A person being questioned while in custodial interrogation must be warned "that he has the right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Id.* Law enforcement officers

> must immediately cease questioning a suspect who has clearly asserted his right to have counsel present during custodial interrogation until such time as the defendant reinitiates communication or counsel is made available. *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

*Zaffino v. Konteh,* 2006 WL 2360902 (N.D.Ohio August 15, 2006). However,

> where a request to cease questioning is "ambiguous or equivocal" in that a reasonable officer in light of the circumstances would have understood that the suspect *might* be invoking the right [to remain silent],

cessation of questioning is not required. *Calhoun v. McKee,* 2007 WL 1452911 (E.D. Michigan May 15, 2007), quoting *Davis v. United States,* 512 U.S. 452, 459 (1994). The United States Court of Appeals for the Sixth Circuit has likewise held that the defendant must clearly and

unequivocally assert his right to silence before police are required to stop questioning him. *United States v. Hurst,* 228 F.3d 751, 759-60 (6th Cir.2000). As discussed by the state appellate court, a statement obtained by police in violation of *Miranda* is subject to the harmless error doctrine. *Arizona v. Fulminante,* 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

Petitioner has failed to establish that the state appellate court's conclusion that he failed to clearly and unequivocally invoke his right to counsel is not unreasonable so as to justify federal habeas corpus relief. This Court agrees with the conclusion of the state appellate court, that the record fails to reflect that petitioner clearly and unequivocally invoked his right to counsel by briefly mentioning to the police the name of his attorney, such that police were required to cease questioning, particularly where he immediately went on to acknowledge that he understood his rights and wanted to speak with police. After police advised petitioner of all of his rights under *Miranda,* the following exchange took place:

> DETECTIVE CARNEY: ... Do you understand all that?
>
> CARSON: Yeah.
>
> DETECTIVE CARNEY: Do you have any questions regarding that?
>
> CARSON: (Witness shook head).
>
> DETECTIVE CARNEY: Okay.

CARSON: My lawyer's name is Sarah Beauchamp so –

DETECTIVE CARNEY: Okay. Do me a favor and read the waiver section. It doesn't mean you agree. It just means you've read it.

CARSON: So ya'll must really got some evidence to hold me, man, right? (Inaudible) – You know, let's just get to the – I don't need all this shit.

DETECTIVE CARNEY: Well, I still have to have you read that so when we get into court –

CARSON: I understand it, man.

DETECTIVE CARNEY: You understand it.

CARSON: Yeah, I understand it, man.

DETECTIVE CARNEY: You're willing to make a statement. Okay. Sign right there saying you read it, you understood it.

(Defendant signed document.)

*Transcript,* Volume I at 55-56.

Claim four is without merit.

## PROCEDURAL DEFAULT

respondent argues that claims four, five, six, seven and nine are procedurally defaulted. In recognition of the equal obligation of the state courts to protect the consti-

tutional rights of criminal defendants and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982)( *per curiam); Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an 'adequate and independent' state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must

demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

In claim four, petitioner asserts that he was denied a fair trial because his statements to police were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436 (1966), and improperly admitted against him at trial. *Amended Petition,* at 13. The state appellate court reviewed this claim for plain error only, because petitioner failed to raise this same issue in his pre-trial motion to suppress statements:

> In his fourth assignment of error, appellant argues that his constitutional rights were violated when he was subjected to a custodial interrogation without properly being informed of his rights pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and that he requested his attorney's presence during the November 8, 2003 interview with the police. Therefore, appellant argues that his statements should have been suppressed.

> First, we note that appellant did not assert a *Miranda* violation in the motion to suppress, nor in any supplemental memoranda filed subsequent to the motion, or at the suppression hearing. Accordingly, appellant has waived all but plain error.

> Appellant was interviewed by the police on two separate occasions. At the first interview on June 24, 2003, the record establishes that Detective Rond reviewed the rights waiver form with appellant, and informed him of his right to stop answering questions at any time. At the second interview on November 8, 2003, the one with which appellant takes issue, Detective Carney again read the rights waiver form, went through appellant's *Miranda* rights, and appellant stated that

36

he understood those rights. The record establishes that appellant was advised of his *Miranda* rights at both interviews, thus we find no merit to appellant's argument regarding a *Miranda* violation.

*State v. Carson*, 2006 WL 1351493 (Ohio App. 10th Dist. May 16, 2006). The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir.2000); *Williams v. Bagley,* 380 F.3d 932, 968 (6th Cir.2004). Petitioner therefore has waived his allegation in claim four that his statements were obtained by police in violation of *Miranda.*

In claim five, petitioner asserts, *inter alia*, that he was denied the effective assistance of trial counsel because his attorney failed to request a mistrial after police removed spectators from the court. This claim is readily apparent from the face of the record and should have been raised on direct appeal, but was not. Further, petitioner may now no longer present such claim to the state courts under Ohio's doctrine of *res judicata. See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981): *State v. Perry,* 10 Ohio St.2d 175 (1967). The state courts were never given the opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural default. The Court deems the first and second parts of the *Maupin* test to have been met as to petitioner's claim that he was denied the effective assistance of counsel because his attorney failed to request a mistrial.

In claim six, petitioner asserts that the prosecutor improperly failed to disclose

exculpatory evidence, specifically, police reports and affidavits for warrants, *see Amended Petition*, at 17, in violation of *Brady v. Maryland, supra.* Petitioner first attempted to present this claim to the state courts in his November 2006 delayed motion for a new trial; however, the state courts refused to consider the merits of this claim as untimely:

> On November 1, 2006, defendant apparently filed a request for leave to file a delayed motion for new trial with the Clerk of the Franklin County Court of Common Pleas ("Clerk"). The Clerk neglected to docket defendant's request and failed to maintain a copy of the request in the case file. The state, however, responded to defendant's request with a memorandum contra.
>
> When the trial court did not rule upon defendant's request, he filed a "Motion to Rule upon Previously Filed Motion for New Trial." In that motion, filed March 21, 2007, defendant urged the trial court to rule upon his November 1, 2006 request. Defendant attached to the motion a copy of the first page of his November 1, 2006 request, which bears the Clerk's time-stamp.
>
> On May 3, 2007, defendant filed a motion entitled "Motion to Supplement/Amend Defendant's Motion for New Trial with New Evidence." Although the motion referred to affidavits and supplemental evidence, defendant failed to attach any such documents to his motion. After the state pointed out this deficiency, defendant filed a motion entitled "Motion to Attach Exhibits to Previously Filed Motion for New Trial." Defendant attached multiple unauthenticated documents to that motion, all of which appear to have existed prior to defendant's trial.
>
> In a May 24, 2007 journal entry, the trial court denied all of defendant's motions. The trial court found that defendant's request for leave to file a delayed motion for new trial was untimely, and that "nothing of record suggest[ed] any reason the standard 14-day deadline could not have been met * * *." (Trial Court's Journal Entry, at 2.)
>
> ***

Pursuant to Crim.R. 33(B):

Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was unavoidably prevented from filing such motion within the time provided herein.

Necessarily then, Crim.R. 33(B) requires a two-step process for filing an untimely motion for new trial. *State v. Lei*, Franklin App. No. 05AP-288, 2006-Ohio-2608, at ¶ 22; *State v. Lordi*, 149 Ohio App.3d 627, 2002-Ohio-5517, at ¶ 25. If a defendant wishes to file a motion for new trial for any reason except newly discovered evidence after the 14-day deadline, the defendant must first seek leave of court to file the delayed motion. *Id.* If the trial court grants leave, the defendant must then file the motion for new trial. *Id.*

Whether a trial court grants leave to file a delayed motion for new trial (for any reason other than newly discovered evidence) depends upon whether the defendant presents clear and convincing proof that he was unavoidably prevented from filing a timely motion. " '[A] party is unavoidably prevented from filing a motion for new trial if the party had no knowledge of the existence of the ground supporting the motion for new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for new trial in the exercise of reasonable diligence.' " *State v. Davis*, Franklin App. No. 03AP-1200, 2004-Ohio-6065, at ¶ 11, quoting *State v. Walden* (1984), 19 Ohio App.3d 141, 145-146.

Essentially, defendant believes that he is entitled to a new trial for three reasons: (1) the prosecutor's misconduct, (2) the trial

court's bias, and (3) his own counsels' ineffective assistance. For the most part, defendant fails to explain how he was unavoidably prevented from discovering these grounds prior to the expiration of the deadline for filing a motion for new trial. Defendant does allege that he only recently discovered that the prosecutor withheld exculpatory evidence; namely, police reports. However, defendant presents no evidence establishing that the police reports were actually withheld or that he learned of them only after the Crim.R. 33(A) filing deadline. Clear and convincing proof that a defendant was unavoidably prevented from filing " 'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.' " *State v. Lee*, Franklin App. No. 05AP-229, 2005-Ohio-6374, at ¶ 9, quoting *State v. Mathis* (1999), 134 Ohio App.3d 77, 79.

Furthermore, the last two grounds that defendant advances-the trial court's bias and ineffective assistance of counsel-are premised in conduct that occurred prior to or during trial. Consequently, we find that defendant did not prove that he was unavoidably prevented from filing a timely motion, and thus, he is not entitled to file a delayed motion.

In so finding, we reject defendant's attempt to expand the scope of his request on appeal. In his appellate brief, appellant represents that Exhibit 1-A to his brief is a duplicate of the request that he filed in the trial court. On page one of Exhibit 1-A, defendant states that he seeks leave to file a delayed motion for new trial based upon newly discovered evidence. However, after comparing Exhibit 1-A to the request attached to the "Motion to Rule upon Previously Filed Motion for New Trial," we discovered that Exhibit 1-A is not identical to the request filed on November 1, 2006. Defendant's November 1, 2006 request does not include newly discovered evidence as a basis for his motion. Because defendant did not argue the existence of newly discovered evidence in his original request, that ground is irrelevant to our timeliness determination.

***

> ... Defendant's request does not include any evidence proving that he was unavoidably prevented from discovering the grounds upon which he sought to base a motion for new trial.

> [D]efendant did not present clear and convincing proof that he was unavoidably prevented from filing his motion for new trial in the designated time period. On appeal, defendant mainly argues that he was unavoidably prevented from discovering new evidence that calls his conviction into question. However, defendant did not assert newly discovered evidence as a ground for a new trial in his request for leave. We cannot consider for the first time on appeal whether defendant could file a delayed motion on that ground. Accordingly, we overrule defendant's third assignment of error.

> For the foregoing reasons, we overrule defendant's assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*State v. Carson, supra*, 2007 WL 4216957. Again, the Court deems the first and second parts of *Maupin* to have been met as to these claims.

In claims seven and nine, petitioner asserts the ineffective assistance of trial counsel based upon his attorney's failure to properly investigate or review discovery material, failure to adequately impeach or cross examine witnesses, failure to prepare for trial, failure to investigate potential alibi witnesses, and failure to call defense witnesses. To the extent that these claims are readily apparent from the face of the record, such claims should have been raised on direct appeal, but were not. Again, petitioner may now no longer present such claims to the state courts under Ohio's doctrine of *res judicata*. *See State v. Cole,*

*supra; State v. Ishmail, supra: State v. Perry, supra.*  The state courts were not given the opportunity to enforce the procedural rule at issue due to the nature of petitioner's procedural default.  Petitioner attempted to raise his ineffective assistance of trial counsel claim in his delayed motion for a new trial; however, as discussed *supra,* the state courts refused to address the merits of such claims in that proceeding.  *See State v. Carson, supra*, 2007 WL 4216957.  To the extent that petitioner's claim of ineffective assistance of counsel relies on matters not readily apparent from the face of the record, such claim would have been properly raised in a petition for post conviction relief pursuant to O.R.C. §2953.21; however, the time period has filed for filing such action has long since expired.  Further, the record fails to reflect that petitioner can meet the requirements for an untimely post conviction petition pursuant to O.R.C. §2953.23, which provides:

> (A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless both of the following apply:
>
> (1) Either of the following applies:
>
> (a) The petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief.
>
> (b) Subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(2) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

*Id.* Because the record fails to reflect that petitioner can meet this standard here, and because the state courts refused to consider the merits of petitioner's claim of ineffective assistance of counsel as presented in his untimely motion for a new trial, this Court deems the first and second parts of the *Maupin* test to have been met as to this claim.

The Court must next decide whether the procedural rules at issue constitute adequate and independent bases upon which to foreclose review of the petitioner's federal constitutional claims. This task requires the Court to balance the state's interests behind each procedural rule against the federal interest in reviewing federal claims. *See Maupin v. Smith,* 785 F.2d at 138. Under this analysis, the procedural rules barring claims constitute adequate and independent state grounds for denying relief. The state courts must be given a full and fair opportunity to remedy alleged constitutional defects. The time requirement for filing post conviction actions, appeals, and motions for new trial and the requirement that all available claims be raised in the first of such a proceeding serves the state's interests in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.

Further, the doctrine of *res judicata* is stated in unmistakable terms in numerous Ohio decisions and Ohio courts have consistently refused to review claims on the merits under that doctrine. *See State v. Cole, supra; State v. Ishmail, supra; State v. Perry, supra.*

The Court concludes that petitioner waived his right to present claims four, a portion of claim five, and claims six, seven, and nine for federal habeas review. Petitioner can still secure review of these claims on the merits if he demonstrates cause for his failure to follow the state procedural rules as well as actual prejudice from the constitutional violations that he alleges. Petitioner has failed to demonstrate either cause for his procedural defaults or actual prejudice resulting from the alleged constitutional violations.

As cause for his procedural default of claim four, wherein petitioner asserts that he was denied a fair trial because his statements, allegedly obtained in violation of *Miranda*, were admitted against him, petitioner asserts the ineffective assistance of counsel. The constitutionally ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 452-53 (2000); however, petitioner's claim of ineffective assistance of counsel for failure to raise a claim that his statements were taken in violation of *Miranda* plainly lacks merit. The state appellate court rejected this claim as follows:

> Appellant was interviewed by the police on two separate occasions. At the first interview on June 24, 2003, the record establishes that Detective Rond reviewed the rights waiver form with appellant, and informed him of his right to stop answering questions at any time. At the second interview on November 8, 2003, the one with which appellant takes issue,

Detective Carney again read the rights waiver form, went through appellant's *Miranda* rights, and appellant stated that he understood those rights. The record establishes that appellant was advised of his *Miranda* rights at both interviews, thus we find no merit to appellant's argument regarding a *Miranda* violation

***

[A]ppellant argues that to the extent that his third and fourth assignments of error are not cognizable under the plain error rule, appellant was denied his right to effective assistance of counsel. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington* (1984), 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Id. at 687. The defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

According to *Strickland:*

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

*Id.* at 687.

Appellant argues that his trial counsel's performance was deficient because his counsel failed to object to the jury instruction on aggravated murder that did not contain language informing the jury that it did not have to be unanimous in finding appellant not guilty of that charge before considering the lesser included charge of murder. Appellant also argues that his trial counsel was ineffective for failing to object to the admission of appellant's statements to the police on November 8, 2003, due to the failure of the state to properly *Mirandize* him. In *State v. Braxton* (June 6, 1985), Fra.App. No. 84AP-924, this court held that where the failure to object does not constitute plain error, the issue cannot be reversed by claiming ineffective assistance of counsel. *Id.* This contention was recently reiterated by this court in *State v. Horsley,* Franklin App. 05AP-350, 2006-Ohio-1208, ¶ 41:

"Defense counsel's failure to object does not automatically become an ineffective assistance of counsel unless the failure to object rises to the level of plain error." *State v. Koogler* (Sept. 6, 1984), Franklin App. No. 84AP-221. 1984 Ohio App. LEXIS 10741, 1984 WL 5883 citing *United States v. DeWolf* (C.A.1, 1982), 696 F.2d 1. To allow a defendant to claim ineffective assistance of counsel based on a failure to object at a time when error could be corrected or avoided would allow a defendant to whipsaw the state where a plain error claim failed. * * *

We held previously, in addressing appellant's third and fourth assignments of error, that the conduct complained of did not constitute error, let alone rise to the level of plain error. Those findings do not change when viewed in a claim that counsel was ineffective. Thus, we find that appellant has failed to demonstrate that trial counsel committed errors so serious that,

> but for those errors, there would be a reasonable probability that the outcome of the trial would have been different. Accordingly, appellant's fifth assignment of error is overruled.

*State v. Carson, supra*, 1351493.

As discussed by the state appellate court, and contrary to petitioner's allegation here, the record reflects that police properly advised petitioner of his rights under *Miranda* prior to questioning. See Transcript, Vol. I, at 18-25; 47-56. Therefore, petitioner's claim of ineffective assistance of counsel fails under the two-prong *Strickland* test. Petitioner likewise has failed to establish cause for his procedural default.

Petitioner contends that the Ohio courts' improperly dismissed his delayed motion for a new trial because he was unable earlier to obtain the documents attached in support of those motions and because the prosecutor improperly withheld exculpatory evidence, in violation of *Brady v. Maryland, supra*. Additionally, according to petitioner, he was diligent in pursing his claims. *See Memorandum in Support of... Cause and Prejudice/Actual Innocence,* Doc. No. 27. Petitioner's arguments are not persuasive.

The record fails to support petitioner's allegation that any of the evidence he refers to in support of his claim of ineffective assistance of counsel, prosecutorial misconduct, and actual innocence, was not known to him at the time of trial or shortly thereafter. As noted by the state appellate court, the record is without support for his claim that the prosecutor failed to turn over police reports and other documents referred to in regard to his allegation that James Parham was the killer. The affidavit submitted by his defense counsel, Attorney

Sarah Beauchamp, reflects that she decided against calling Craig Walton as a defense witness. Additionally, the fact that police investigated Parham as a suspect in the murder was brought out at trial. *Transcript, Volume VII*, at 150-153. Further, petitioner failed to raise any of his claims regarding allegedly newly discovered evidence presented in his earlier motions for new trial on direct appeal. In short, the record fails to reflect either that the prosecutor failed to disclose any evidence to petitioner, or that petitioner was prevented from earlier raising his claims in the state courts. Petitioner has failed to establish cause for his procedural defaults.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). After review of the record, including all of the supplemental evidence provided by petitioner in support of his claim of actual innocence, this Court does not deem this to be such a case.

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup,* 513 U.S. at 316, 115 S.Ct. 851. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 3 17, 115 S.Ct. 851. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." ... *Id.* at 327, 115 S.Ct. 851.

48

> The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 115 S.Ct. 851.

*Souter v. Jones,* 395 F.3d 577, 598-90 (6th Cir. 2005). Despite petitioner's arguments to the contrary, he has failed to meet this standard here.

## CLAIM EIGHT

In claim eight, petitioner asserts that he is actually innocent of the charges against him. This claim fails to present an issue appropriate for federal habeas corpus review. This claim is not appropriate for federal habeas corpus review. *See Cress v. Palmer*, 484 F.3d 844, 854-55 (6th Cir. 2007)(citations omitted).

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

If any party objects to this *Report and Recommendation,* that party may, within ten (10) day of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

s/Mark R. Abel
United States Magistrate Judge